1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8

9    TOM McMILLIN,

10              Plaintiff,                              No. C 11-03201 WHA

11        v.

12   FOSTER CITY, FOSTER CITY POLICE              **ORDER GRANTING**
     DEPARTMENT, DOUGLAS NIX,                     **DEFENDANTS' MOTION**
13   PIERRE MORRISON, and DOES 1–40,              **TO DISMISS AND**
                                                  **VACATING HEARING**
14              Defendants.

15   _____/

16                           **INTRODUCTION**

17        In this Section 1983 civil-rights action, defendants move to dismiss pursuant to

18   FRCP 12(b)(6).  For the reasons stated below, the motion is **GRANTED**.

19                            **STATEMENT**

20        Plaintiff Tom McMillin, who is represented by counsel, is a citizen of the United States.

21   Defendants are Foster City, a municipal corporation organized and existing under the laws of the

22   State of California; Foster City Police Department; Officers Douglas Nix and Pierre Morrison,

23   members of the Foster City Police Department; and Does 1 through 40.

24        The instant action arose several years after plaintiff pursued a civil lawsuit against

25   defendants in state court.  This order holds that the original lawsuit cannot now be resurrected,

26   as it is barred by res judicata and the statute of limitations.  At issue in the instant action is

27   alleged retaliation against plaintiff *after* the state-court proceedings, in particular, a report made

28   to the state agency that licenses plaintiff and his business.  The following facts are set forth in the

*United States District Court*
*For the Northern District of California*

operative complaint.  Many of these facts pertain to the claims already litigated in state court, which are precluded from relitigation here.

Plaintiff has been a security officer for over twenty-five years and has owned a private security company, Bay Cities Patrol, for over twenty years.  He has been licensed to carry firearms throughout this time (First Amd. Compl. ¶ 4).

In October 2006, plaintiff heard what seemed to be a gunshot hit his home in Foster City and saw a group of six or seven individuals carrying what appeared to be a rifle and a handgun. He contacted the Foster City police to report the incident, and then proceeded to the park across the street where the group was headed.  Plaintiff wore a "tactical vest with proper identification." When he "ran into" the subjects, he detained them until the police arrived.  The subjects' firearms were found to be "a bb gun, pellet gun, and two air-soft gun-like firearms designed to resemble lethal firearms" (*id.* ¶¶ 23–26).[1]

One year later, plaintiff was named in a criminal complaint arising out of the above-described incident and was required to surrender all of his firearms.  The criminal complaint alleged 21 counts but was dismissed when plaintiff pled no contest to one count of disturbing the peace.  Plaintiff now alleges that at the time the state criminal case was set to proceed to trial, the San Mateo DA's office violated his civil rights.  After the criminal matter was over, the Foster City police chief conducted an internal investigation into plaintiff's complaint about police misconduct, and plaintiff received a letter of apology.  Plaintiff took this information to the state trial court and his probation was terminated.  The state trial court also overturned plaintiff's no-contest plea and dismissed the charge (*id.* ¶¶ 27–29).

Shortly thereafter, plaintiff filed a civil complaint in state court against Foster City and several officers.  This instant action arises out of conduct that occurred after the state civil lawsuit was dismissed, namely, a report allegedly made to the state private-security licensing agency about the events described above.  Plaintiff alleges that this report was made by a "person or persons, the identity(ies) of whom Plaintiff remains unaware, acting in concert with and/or at

---

[1] The initial federal complaint indicated plaintiff was "[i]n lawful possession of his own firearm" (Compl. ¶ 24).  This fact was omitted from the operative complaint.

United States District Court

For the Northern District of California

the behest of [d]efendants," in retaliation for his "having sued Foster City and its officers, and for having complained about the individual officers' conduct" (*id.* ¶¶ 7, 30–32).

1. **PLAINTIFF'S STATE-COURT ACTIONS.**

As noted above, in September 2009, plaintiff filed a complaint in San Mateo County Superior Court seeking damages for negligence, violation of civil rights under 42 U.S.C. 1983, and failure to discharge mandatory duty (RJN Exh. 5).[2]  Plaintiff amended the complaint in late October 2009 to add causes of action for violation of California Civil Code Section 52.3, intentional infliction of emotional distress, and negligent infliction of emotional distress (RJN Exh. 6).

The state-court complaint alleged facts from the October 2006 incident discussed above through the January 2009 letter of apology from the chief of police and the May 2009 dismissal of the criminal complaint (RJN Exh. 6, ¶¶ 7–16).  The state trial court sustained defendants' demurrer as to the second, third and fourth causes of action on grounds that plaintiff failed to state causes of action for violations of Section 1983 and California Civil Code Section 52.3, and overruled the demurrer to the first, fifth, and sixth causes of action for negligence and infliction of emotional distress (RJN Exh. 11).  On appeal, defendants argued that the plaintiff's claim was untimely because the negligence and infliction of emotional distress causes of action accrued more than six months before the state-court civil lawsuit was filed.  *City of Foster City v. Superior Court*, No. Civ 487543, 2010 WL 4493422, at *5 (Cal. Ct. App. Nov. 10, 2010). Plaintiff attempted to argue under the discovery rule that his cause of action did not accrue until he received the letter in January 2009; however, the state court of appeal ruled that plaintiff had been aware of the factual basis for his action upon his arrest and the filing of criminal charges against him, and that the letter did not serve to extend the accrual date.  *See id.* at *7 ("All of the elements of plaintiff's action, wrongdoing, causation, and alleged damages, occurred by no later than December of 2007.").  The state court of appeal ordered the superior court to sustain the general demurrer in its entirety without leave to amend.  *Id.* at *8; (RJN Exh. 21).

---

[2]  Defendants request judicial notice of documents from the state-court civil lawsuit (RJN Exhs. 1–21, 23) and the instant federal action (RJN Exhs. 22, 24, 25).  As the state-court documents are matters of public record not subject to reasonable dispute, defendants' request as to exhibits 1–21 and 23 is **GRANTED**.

**United States District Court**
For the Northern District of California

2.    THE INSTANT ACTION:  PLAINTIFF'S FEDERAL SUIT.

A few months later, plaintiff filed a complaint herein, alleging civil rights violations under 42 U.S.C. 1983 (Compl. ¶ 1).  At the case management conference, defendants' counsel pointed out that plaintiff had already brought a Section 1983 action in state court (Tr. 6, Dkt. No. 30).  The parties agreed that plaintiff would file an amended complaint to address issues related to res judicata and statute of limitations (*ibid.*).  Plaintiff's counsel indicated that while certain issues have been adjudicated, the instant action arose out of events that occurred afterwards, and agreed to file an amended complaint the following day (*id.* 6–7).

The amended complaint alleges that after the state court of appeal ordered the dismissal of the state civil lawsuit, an unidentified person or persons filed a report with the state agency which oversees and licenses private patrol entities and persons such as plaintiff, against plaintiff in retaliation for filing his state-court civil lawsuit (First Amd. Compl. ¶ 31).  Plaintiff alleges that the report was an act of retaliation by unknown persons in furtherance of a conspiracy among defendants to deprive plaintiff of his civil rights (*id.* ¶ 7).

Plaintiff's first Section 1983 claim, against all defendants, alleges violations of plaintiff's First, Fourth, and/or Fourteenth Amendment rights, including:

> a. The right to be free from false police work, selective prosecution, and charges motivated by "self-aggrandizement";
>
> b. Right not to be deprived of liberty without due process of law;
>
> c. Right to be free from unreasonable searches and seizures;
>
> d. Right to be free from pre-trial punishment;
>
> e. Right to be free from discrimination based on protected activity; and/or,
>
> f. Right to equal protection of the law.

(*Id.* ¶ 34).

The second Section 1983 claim, made only against Foster City, Foster City Police Department, Officer Morrison, and Does 1–40 (but not against Officer Nix), sets forth the alleged violations quoted above and also asserts that these defendants, "through deliberate indifference, tacitly or expressly authorized, ratified, condoned, approved, the conduct of their

4

1   co-defendants" and that these defendants "set the official policies, customs, and practices that

2   were the moving force behind Plaintiff's constitutional injuries."  Plaintiff alleges that

3   defendants conspired for the purpose of depriving his constitutional rights, and that such

4   deprivations occurred, including but not limited to those violations quoted above (*id.* ¶¶ 37–40).

5       Plaintiff further alleges on information and belief that "certain Defendants know the

6   identity of the person(s) who made the retaliatory complaint, neither the defense nor the state

7   agency will divulge this information under guise of privilege."  Plaintiff asserts that he "thus

8   may lose his license and business as a direct result of having sued Foster City and its officers,

9   and for having complained about the individual officers' conduct" and that he "suffered injuries

10  as a result" (*id.* ¶¶ 31–32).

11      Defendants now move to dismiss pursuant to FRCP 12(b)(6).

12                              **ANALYSIS**

13      To survive a motion to dismiss, a complaint must contain sufficient factual matter,

14  accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct.

15  1937, 1949 (2009).  A claim is facially plausible when there are sufficient factual allegations to

16  draw a reasonable inference that the defendant is liable for the conduct alleged.  While a court

17  "must take all of the factual allegations in the complaint as true," it is "not bound to accept

18  as true a legal conclusion couched as a factual allegation."  *Id.* at 1949–50 (quoting *Bell Atl.*

19  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

20  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a

21  motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy* Co., 83 F.3d 1136,

22  1140 (9th Cir. 1996) (citation omitted).

23      To state a claim under 42 U.S.C. 1983, a plaintiff must allege two essential elements:

24  (1) that a right secured by the Constitution or laws of the United States was violated, and

25  (2) that the alleged deprivation was committed by a person acting under the color of state law.

26  *West v. Atkins*, 487 U.S. 42, 48 (1988).  "Vague and conclusory allegations of official

27  participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v.*

28  *Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "The plaintiff must

**United States District Court**
For the Northern District of California

1    allege with at least some degree of particularity overt acts which defendants engaged in that

2    support the plaintiff's claim." *Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984)

3    (finding failure to state sufficient facts for a Section 1983 claim) (internal quotation omitted).

4            Defendants argue that plaintiff's claims are barred by claim preclusion, statute of

5    limitations, and ripeness considerations.  Defendants point to additional pleading deficiencies,

6    arguing that the complaint alleges constitutional violations for interests not recognized as

7    constitutional rights, fails to state a prima facie conspiracy claim, pleads insufficient facts

8    in support of the due process and Fourth Amendment claims, and fails to meet pleading

9    requirements for the remaining claims.

10           This order finds that while the claim preclusion and statute of limitations considerations

11   do not entirely defeat plaintiff's complaint, they significantly limit its scope.  Nevertheless, the

12   complaint's factual allegations as to the remaining retaliation claims are insufficient to maintain

13   an action under Section 1983 because (1) the filing of the report to the state agency constitutes

14   activity protected under the *Noerr-Pennington* doctrine, (2) the allegations fail to support a

15   plausible inference that defendants were responsible for the report, and (3) plaintiff's claims

16   are not ripe for adjudication.

17           **1.     CLAIM PRECLUSION.**

18           Congress has explicitly required that state court decisions be given "the same full faith

19   and credit in every court within the United States . . . as they have by law or usage in the courts

20   of such State . . . from which they are taken."  28 U.S.C. 1738.  Res judicata, also known as

21   claim preclusion, effectuates this purpose.  "Section 1738 does not allow federal courts to

22   employ their own preclusion rules in determining the preclusive effect of state judgments.

23   'Rather, it . . . commands a federal court to accept the rules chosen by the State from which

24   the judgment is taken.'"  *Noel v. Hall*, 341 F.3d 1148, 1166 (9th Cir. 2003) (internal quotation

25   omitted).  Thus, this order must look to the California state-law rule of claim preclusion:

26                   [A] valid, final judgment on the merits precludes parties or their
                     privies from relitigating the same "cause of action" in a subsequent
27                   suit.  Thus three requirements have to be met:  (1) the second
                     lawsuit must involve the same "cause of action" as the first one,
28                   (2) there must have been a final judgment on the merits in the first

United States District Court
For the Northern District of California

lawsuit and (3) the party to be precluded must itself have been a
party, or in privity with a party, to that first lawsuit.

*             *             *

California law defines a "cause of action" for purposes of the
res judicata doctrine by analyzing the primary right at stake.

That concept "is indivisible: the violation of a single primary right
gives rise to but a single cause of action."

[I]f two actions involve the same injury to the plaintiff and the
same wrong by the defendant then the same primary right is at
stake even if in the second suit the plaintiff pleads different
theories of recovery, seeks different forms of relief and/or adds
new facts supporting recovery.

But the "primary right" brush cannot be wielded too carelessly:

On the other hand, different primary rights may be violated by the
same wrongful conduct.

What is critical to the analysis "is the harm suffered; that the same
facts are involved in both suits is not conclusive."

*San Diego Police Officers' Ass'n v. San Diego City Employees' Ret. Sys.*, 568 F.3d 725, 734

(9th Cir. 2009) (internal quotation omitted).

　　　If the two suits involve the same cause of action, subsequent grounds for recovery are

barred if they were raised or could have been raised in the first case.  Newly articulated claims

based on the same "transactional nucleus of facts" may still be subject to a res judicata finding

if the claims could have been brought in the earlier action.  *Tahoe-Sierra Pres. Council, Inc. v.*

*Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003).

　　　Here, there is identity of the parties because all of the defendants were also named in the

state-court civil lawsuit, with the exception of Foster City Police Department.  Because the

police department is a division of Foster City (which was named in the state lawsuit), their

identity of interest is sufficient to justify finding privity.

　　　There also was a final judgment on the merits in the state litigation.  "A judgment given

after the sustaining of a general demurrer on a ground of substance, for example, that an absolute

defense is disclosed by the allegations of the complaint, may be deemed a judgment on the

7

merits." *Goddard v. Sec. Title Ins. & Guarantee Co.*, 14 Cal. 2d 47, 52 (1939).  Such judgment

after sustaining a general demurrer

> is a judgment on the merits to the extent that it adjudicates that the facts alleged do not constitute a cause of action, and will, accordingly, be a bar to a subsequent action alleging the same facts.  Moreover, even though different facts may be alleged in the second action, if the demurrer was sustained in the first action on a ground equally applicable to the second, the former judgment will also be a bar.  If, on the other hand, new or additional facts are alleged that cure the defects in the original pleading, it is settled that the former judgment is not a bar to the subsequent action whether or not the plaintiff had an opportunity to amend his complaint.

*Keidatz v. Albany*, 39 Cal. 2d 826, 828 (1952) (citations omitted).  In plaintiff's state-court

lawsuit, the final outcome sustained defendants' general demurrer without leave to amend on

grounds that the statute of limitations was an absolute defense to all causes of action.  *City of*

*Foster City v. Superior Court*, No. CIV 487543, 2010 WL 4493422, at *7 (Cal. Ct. App. Nov.

10, 2010).  Plaintiff already attempted to cure the statute of limitations defects by arguing under

the discovery rule that the accrual of his causes of action was delayed, and that question was

adjudicated by the state court of appeal when it sustained the general demurrer.

The amended federal complaint, therefore, can properly allege only claims arising

*after* the date of the pleading at issue in state court.  *See Allied Fire Prot. v. Diede Const., Inc.*,

127 Cal. App. 4th 150, 155 (2005) (citing *Yager v. Yager*, 7 Cal. 2d 213, 217 (1936))

("Res judicata is not a bar to claims that arise after the initial complaint is filed.  These rights

may be asserted in a supplemental pleading, but if such a pleading is not filed a plaintiff is

not foreclosed from asserting the rights in a subsequent action.").

To the extent the operative federal complaint herein refers to prior events, those

allegations are merely contextual background for the later retaliatory conduct.  Plaintiff may

allege facts pertaining to his state-court civil lawsuit insofar as he alleges the lawsuit was a

motive for retaliation, but he may not get another bite at the apple for the underlying state-court

claims.  Plaintiff does not dispute the claim preclusion limitations on his current federal lawsuit,

and notes that he "does not address the asserted bars of res judicata and collateral estoppel

1   because these bars do not apply to claims arising in 2011, long after the appellate decisions

2   against Plaintiff in the state case" (Opp. 5 n.4).

3        Defendants focus on the pleading of facts relating to the October 2006 incident and

4   subsequent criminal proceedings to show the entire federal lawsuit is barred. Defendants assert

5   that "[a]ny differences between Plaintiff's state case and the present federal case fall within

6   the broad preclusion as 'every other issue that might properly have been litigated'" (Br. 7).

7   The amended complaint sets forth lengthy facts about the 2006 incident, such that it is initially

8   difficult to distinguish the claims alleged in state and federal court. Nevertheless, plaintiff

9   alleges additional facts in his federal complaint that do more than propose an alternate theory

10  of recovery, and which raise claims that could not have been litigated in the state-court civil

11  lawsuit (*see* First Amd. Compl. ¶¶ 7, 31).

12       These new factual allegations describe the alleged report made to the state licensing

13  agency. This report was allegedly made to the state agency *after* the dismissal of the state

14  court action and therefore is not subject to claim preclusion (*id.* ¶ 31). Plaintiff alleges that he

15  was retaliated against for filing his state-court civil lawsuit and for his continuing efforts "to

16  bring matters of public concern to the attention of local authorities" (*id.* ¶ 16). He also alleges

17  this retaliation was in response to his "protected activity" of filing the state-court civil lawsuit

18  (*id.* ¶¶ 7, 16; Opp. 5).

19       The injuries resulting from the alleged retaliatory report to the state agency in 2011 are

20  plausibly distinguishable from the injuries that plaintiff litigated in state court. The harm of

21  plaintiff's being falsely prosecuted on criminal charges is different from the harm of retaliation

22  for exercise of First Amendment rights, the deprivation of equal protection, or other violations

23  alleged in the federal complaint.

24

25

26

27

28

**United States District Court**
For the Northern District of California

9

1    Defendants make much of the rule established in *Heck v. Humphrey*, 512 U.S. 477

2    (1994), but *Heck* does not serve to negate any possible claim that plaintiff might have against

3    defendants.³  *Heck* held that when a plaintiff

4                 seeks damages in a § 1983 suit, the district court must consider
             whether a judgment in favor of the plaintiff would necessarily
5             imply the invalidity of his conviction or sentence; if it would, the
             complaint must be dismissed unless the plaintiff can demonstrate
6             that the conviction or sentence has already been invalidated.

7    *Id.* at 487.

8    To say that plaintiff's conviction for disturbing the peace bars all of his potential claims

9    against defendants is an oversimplification.  Because plaintiff alleges the unlawful retaliatory

10   report was filed *after* the state proceedings, a judgment against defendants does not necessarily

11   implicate the earlier events underlying plaintiff's conviction.  In addition, because plaintiff

12   alleges that the retaliation stemmed from more than one event — including "at least one prior

13   incident" where he "lawfully performed a police-like function" (First Amd. Compl. ¶ 7) — a

14   judgment in favor of plaintiff would not necessarily imply that the conviction for disturbing the

15   peace is invalid, since the other conduct may form an independent basis for judgment.  (At this

16   stage, the allegations of the "prior incident" are too vague to support a claim.)  Plaintiff is

17   alleging that the retaliation was to punish him for his filing a state-court civil lawsuit against

18   defendants.

19        **2.    STATUTE OF LIMITATIONS.**

20   Claims brought under Section 1983 are governed by the forum state's statute of

21   limitations for personal injury claims, which is two years in California.  *See* CAL. CODE CIV.

22   PROC. § 335.1; *Colony Cove Props, LLC v. City Of Carson*, 640 F.3d 948, 956 (9th Cir. 2011).

23   A plaintiff may plead a claim under Section 1983 for an ongoing violation by showing "a

24   systematic policy or practice that operated, in part, within the limitations period."  *Mansourian v.*

25   *Regents of Univ. of Cal.*, 602 F.3d 957, 973–74 (9th Cir. 2010) (citation omitted).

26

27        ³ Defendants dispute whether, as a matter of law, the early termination of plaintiff's probation and
     dismissal of the charges sufficiently invalidates his conviction for res judicata purposes under *Heck* (Reply Br.
28   1–3).  This order need not decide that issue, because assuming for the sake of argument that the conviction is
     still valid, *Heck* nevertheless does not bar all of plaintiff's claims.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    Defendants argue that the statute of limitations bars all claims that accrued before

2  June 28, 2009 (Br. 9).  Because the claims which accrued prior to the initiation of the 2008

3  state-court civil lawsuit are barred by claim preclusion, this order need only rule on the

4  applicability of the statute of limitations to claims arising after the state-court judgment.

5  The operative complaint does not specify when the report to the state agency was filed, or

6  when plaintiff first became aware of it, other than that it was "in close proximity to" and "after"

7  the ultimate dismissal of the state suit (First Amd. Compl. ¶¶ 7, 31).  Nonetheless, since the

8  peremptory writ of mandate ordering the state-court civil lawsuit dismissed was issued in

9  February 2011 (RJN Exh. 21), claims arising out of the subsequent report to the state licensing

10  agency would not be barred by the two-year statute of limitations.

11         **3.    RETALIATION-BASED CLAIMS.[4]**

12    This order now holds that the pleadings do not overcome *Noerr-Pennington* protection

13  for the filing of the report, do not allege sufficient factual matter to support the conclusion

14  that defendants are responsible for the alleged retaliation, and do not state claims ripe for

15  adjudication, for the following reasons.

16         **A.    Report To The State Agency Is Protected
               Under *Noerr-Pennington* Immunity.**

17

18    Plaintiff is correct that state law cannot create immunities from Section 1983 liability;

19  however, the alleged retaliatory reporting to the state agency is protected by the First

20  Amendment and the *Noerr-Pennington* rule.[5]

21         "The Supreme Court has described the right to petition as 'among
               the most precious of the liberties safeguarded by the Bill of Rights'
22             and 'intimately connected, both in origin and in purpose, with

23    [4]  In addition to the retaliation-based claims, plaintiff alleges violations of his constitutional rights "to
    be free from false police work" and "charges motivated by 'self-aggrandizement'" (First Amd. Compl. ¶¶ 34,
24  40).  Defendants argue that these are not constitutional rights (Br. 10–11).  Although various constitutional
    violations may arise out of police misconduct, plaintiff must enumerate the specific constitutional rights
25  allegedly violated, rather than assert a generalized right "to be free from false police work."  Plaintiff
    acknowledges aggrandizement is not a cause of action and does not oppose dismissal of this claim (Opp. 5 n.3).

26

27    [5]  Plaintiff cites to *Dennis v. Sparks*, 449 U.S. 24, 28–29 (1980), to argue that immunity of an unnamed
    party does not protect defendants who conspired with that party from liability.  *Dennis* is inapposite because
28  here, the issue is not whether unnamed defendant co-conspirators can derive protection from the hypothetical
    judicial immunity of another co-conspirator; it is whether the First Amendment protects the petitioning activity
    of reporting to the state agency.

United States District Court

For the Northern District of California

> other First Amendment rights of free speech and free press.'"
> Under the Noerr-Pennington doctrine, those who petition all
> departments of the government for redress are generally immune
> from liability.  Although the Noerr-Pennington doctrine originally
> immunized individuals and entities from antitrust liability,
> Noerr-Pennington immunity now applies to claims under § 1983
> that are based on the petitioning of public authorities.
> "Noerr-Pennington is a label for a form of First Amendment
> protection; to say that one does not have Noerr-Pennington
> immunity is to conclude that one's petitioning activity is
> unprotected by the First Amendment."

*Empress LLC v. City and Cnty. of S. F.*, 419 F.3d 1052, 1056 (9th Cir. 2005) (citations omitted).

Our court of appeals has held that a motion to dismiss is appropriate where a complaint cannot

survive application of the *Noerr-Pennington* rule even under the FRCP 8(a) pleading standard.

*Id.* at 1056–57.

> *Noerr-Pennington* protection is not absolute:

> The "sham" exception to *Noerr* encompasses situations in
> which persons use the governmental process — as opposed to
> the outcome of that process — as an anticompetitive weapon.
> A classic example is the filing of frivolous objections to the
> license application of a competitor, with no expectation of
> achieving denial of the license but simply in order to impose
> expense and delay.  A "sham" situation involves a defendant
> whose activities are not genuinely aimed a procuring favorable
> government action at all, not one who genuinely seeks to achieve
> his governmental result, but does so through improper means.

*Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998) (quoting *City of Columbia v.*

*Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380 (1991)) (citations and quotation marks omitted).

Our court of appeals has held that "the scope of the sham exception to the

*Noerr-Pennington* doctrine depends on the branch of government involved."  *Id.* at 1061.

The exception is narrow in actions involving the legislature and broader when the judiciary

is involved.  *Id.* at 1062.  Application of the rule in matters involving the executive branch

is particularly complex and context-specific because of the diversity of state and federal

administrative agencies, but in general, "the scope of immunity depends on the degree of

political discretion exercised by the government agency."  *Ibid.* (citation omitted).

Here, although the operative complaint does not allege which state agency is implicated,

the Court takes judicial notice that private patrol operators and firearm qualification cardholders

such as Bay Cities Patrol and plaintiff are licensed by the California Department of Consumer

United States District Court
For the Northern District of California

Affairs, Bureau of Security and Investigative Services ("BSIS"). (BSIS and its disciplinary processes are discussed in greater detail in Section C below.) This order does not define the precise bounds of the sham exception to *Noerr-Pennington* protection, but finds plaintiff fails to allege facts that would justify even a liberal application of the exception. In *Kottle*, the court applied the judicial sham exception to an administrative agency because it "operate[d] in a in a sufficiently non-political way" and "exercise[d] a sufficiently circumscribed form of administrative authority," such that its decisions "b[ore] many indicia of a true adjudicatory proceeding," including conducting hearings and allowing appeals of decisions according to APA procedures and statutory standards. 146 F.3d at 1062. BSIS similarly conducts disciplinary review hearings which may be appealed by request for a formal administrative hearing conducted pursuant to California Government Code Sections 11500–11530; thus, this order applies the judicial sham exception framework.

Our court of appeals affirmed dismissal of plaintiff's claims in *Kottle* because "[f]rom [plaintiff's] complaint, we do not know exactly what representations [defendant] made, or to whom; with whom [defendant] conspired; [or] what exactly [defendant's] "improper and/or unlawful" methods of advocacy were." *Id.* at 1063. So too here. Plaintiff does not allege who filed the report, what representations it contained (or even that it was false or inaccurate), or who was involved in the alleged conspiracy. Even where the exception is broadest, in the context of sham litigation, it still requires *"both* objective baselessness and an improper motive." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006). At a minimum, plaintiff's allegations of retaliatory motive are insufficient if the report was not also objectively baseless.

Our court of appeals has applied a heightened pleading standard to a motion to dismiss for failure to state a claim because when "a plaintiff seeks damages . . . for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." *Ibid.* (citing *Franchise Realty Interstate Corp. v. S. F. Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076 (9th Cir. 1976)). Here, the allegation that a report was filed with a state licensing agency, about a person and entity (plaintiff and Bay Cities) licensed

**United States District Court**
For the Northern District of California

1   by said agency, describes conduct that is prima facie protected by the First Amendment.

2   Plaintiff has the burden to plead facts to show the sham exception applies and has failed to do so,

3   the complaint being vague on this score.

**B.      Allegations Do Not Support The Inference
That Defendants Are Liable For The Report.**

This order also finds that the claims are not facially plausible because the allegations of

retaliatory motive and timing of the report are insufficient to support an inference that defendants

are responsible.

The complaint contains conclusory allegations that defendants were engaged in a

conspiracy to retaliate, and that defendants were responsible for the conduct that allegedly

violated plaintiff's constitutional rights.  Plaintiff alleges that an *unidentified person or persons*

acted "in concert and/or at the behest of" defendants, and "made a report to the state agency

which licensed Plaintiff as an armed, private security officer about the events described [in the

complaint]" (*id.* ¶ 7).  Plaintiff does not plead sufficient factual allegations to support a

reasonable inference that defendants submitted a report, let alone violated constitutional rights.

The operative complaint does not allege when the report was filed, who submitted it, how

plaintiff learned of its existence, or even which agency it was submitted to.  Importantly, it does

not describe what the report *contained*, apart from the allegation that it was about the events

described in the complaint.

It is understandable that plaintiff might not know who filed the report; however, the

conclusion that defendants knew and conspired with the individual(s) who made the report is not

supported.  While filing a report may constitute an overt act in support of a conspiracy, plaintiff

pleads no factual allegations to show an actual agreement among conspirators.  There are equally

if not more plausible explanations for the report.  For example, the individuals plaintiff detained

in the park had reason to be upset with plaintiff's conduct towards them, and may have filed

a report.  Or, a defendant may have done so *prior* to the commencement of the state court

proceeding by plaintiff, that is, before there was anything to retaliate about.

Since plaintiff does not allege facts about the content of the report, it is unclear how

the report has resulted in actual deprivation of plaintiff's constitutional rights as required for a

14

1   Section 1983 claim.  As defendants note, plaintiff does not plead that the report's content was

2   false or inaccurate.  Nor does the complaint allege the consequences of the report with any

3   specificity; general allegations of harm such as "plaintiff suffered the loss of his constitutional

4   rights and suffered grievous injuries" are too vague to support an inference of actual deprivation

5   (*see id.* ¶¶ 21, 32).

6          In addition, the factual matter alleged does not reasonably support the inference that

7   the person(s) who submitted the report acted under the color of state law, as required for a

8   Section 1983 claim.  The only specific act of retaliation that plaintiff alleges is the confidential

9   report to the state licensing agency, which is not inherently an action under color of law.

10  *See Schatte v. Int'l Alliance of Theatrical Stage Emps. and Moving Picture Mach. Operators*,

11  182 F.2d 158, 167 (9th Cir. 1950).  Plaintiff asserts:  "In doing the acts or omissions alleged,

12  the defendants and each of them were acting in the course and scope of their employment with

13  their respective agencies.  In doing the acts or omissions alleged, the defendants acted under

14  color of authority and/or under color of law" (First Amd. Compl. ¶¶ 10–11).  Yet, because

15  plaintiff admits that he is unaware of the identity of the person who made the report (*id.* ¶ 7),

16  these allegations amount to mere legal conclusions.  Unless plaintiff alleges facts to show the

17  conduct at issue meets the requirements of action under color of law, his Section 1983 claims

18  for each constitutional violation arising from that conduct necessarily fail.

19         Because the report was allegedly made a short time after the dismissal of the state-court

20  civil lawsuit, plaintiff asserts that it was "likely an act of retaliation" in furtherance of the

21  conspiracy, and was the cause of plaintiff's damages, for which defendants should be liable

22  (*id.* ¶¶ 7, 31).  The operative complaint does not allege how plaintiff learned of the report or

23  how he knows when it was filed.  Moreover, the allegation that the report was filed after the

24  dismissal of the state lawsuit is too tenuous to show that defendants agreed with anyone, much

25  less that they shared an objective to violate plaintiff's constitutional rights.  *See Bell Atlantic*

26  *Corp. v. Twombly*, 550 U.S. 544, 557 (1955) ("[A] conclusory allegation of agreement at some

27  unidentified point does not supply facts adequate to show illegality.").  The timing of the report

28

United States District Court

For the Northern District of California

15

is insufficient to show causation for First Amendment retaliation when alleged without further factual support of the inference. *See Pratt v. Rowland*, 65 F.3d 802, 807–08 (9th Cir. 1995).

Furthermore, a history of negative interactions among the parties — in this case, a prior lawsuit brought by plaintiff against defendants — is not determinative because "[t]here is almost always a weak inference of retaliation whenever a plaintiff and a defendant have had previous negative interactions." *See Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008). The fact that a negative action occurred after a plaintiff criticized the defendants is insufficient to state a claim for First Amendment retaliation. *See Dumas v. Kipp*, 90 F.3d 386, 392–93 (9th Cir. 1996).

### C.    Judicial Notice of BSIS Licensing Process.

Although the parties have failed to explain the identity of the state agency in question, the Court has inquired about the system by which private patrol operators and firearm qualification cardholders are regulated, pursuant to the Private Security Services Act, CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 7580–7588.5, and will take judicial notice of the following facts.

The BSIS licenses private patrol operators and firearm qualification cardholders, and operates within the California Department of Consumer Affairs ("DCA"). *See* BSIS, http://www.bsis.ca.gov/ (last visited Jul. 2, 2012).

The DCA administers a complaint resolution program, whereby members of the public can submit complaints by phone, mail or online. *Complaint Resolution Brochure* (Apr. 2008), *available at* http://www.dca.ca.gov/online_services/complaints/comp_med_brochure.pdf. The DCA does not promise assistance in response to anonymous tips. *How to File an Anonymous Tip*, http://www.dca.ca.gov/online_services/complaints/complfrm.shtml (last visited Jul. 2, 2012). In response to complaints where the consumer provides his or her contact information, DCA representatives contact the consumer and the business to gather facts and attempt to facilitate a resolution. Complaints with serious violations are referred to DCA enforcement staff for investigation and disciplinary action. *Complaint Resolution Brochure*.

The BSIS director is authorized to issue citations to licensees if investigation reveals violations of certain sections of the Private Security Services Act. Citations must be in writing

United States District Court
For the Northern District of California

1    and indicate the nature of the violation as well as the specific section of code violated.

2    Administrative fines up to $2,500 may be assessed.  CAL. BUS. PROF. CODE § 7587.7.

3           Certain administrative fine decisions may be appealed to the BSIS Private Security

4    Disciplinary Review Committee ("DRC"), which consists of ten members appointed by the

5    Governor.  The DRC conducts informal hearings where the licensee is read the facts of the

6    case and is allowed to present testimony, character witnesses, and documentation to argue

7    for overturning the BSIS decision.  The licensee may be represented by counsel.  *Notice of*

8    *Disciplinary Review Hearings Before The Private Security Disciplinary Review Committee*,

9    *available at* http://www.bsis.ca.gov/customer_service/drcps_hearing.pdf (last visited Jul. 2,

10   2012).

11          If the licensee contests the DRC decision, or if the original BSIS decision is not eligible

12   for DRC review (such as for denials, revocations, or suspensions ordered by the Director

13   pursuant to the APA), the licensee may appeal for a formal hearing to be conducted pursuant to

14   California Government Code Sections 11500–11530 (Administrative Adjudication).  CAL. BUS.

15   PROF. CODE § 7587.7.  An administrative law judge presides over every formal hearing in a

16   contested case.  CAL. GOV'T CODE § 11512(a).  In formal hearings, licensees may be represented

17   by counsel, may conduct discovery, and may cross-examine witnesses.  *Id.* §§ 11505, 11507.5–7,

18   11513).

19          Here, plaintiff has not alleged that he has been cited, fined, or that a formal

20   administrative adjudication proceeding has been initiated against him according to the above-

21   described processes.  The complaint alleges plaintiff "suffered injuries as a result" of the alleged

22   conduct, and his brief attempts to supplement this explanation by asserting that "[h]e has

23   incurred fees, lost income, and business loss as a result" of the report to the agency (First Amd.

24   Compl. ¶ 32; Opp. 4).  Defendants point out that plaintiff does not allege his license has been

25   revoked or suspended, and that the complaint merely "relies on injuries that 'may' happen" (Br.

26   10).  Moreover, this order notes that as of June 28, 2012, the BSIS license search website shows

27   that Bay Cities Patrol and plaintiff both have "clear" license statuses with no "actions."

28   *See* http://www.bsis.ca.gov/online_services/verify_license.shtml (license nos. 9386, 44228).

17

**D.      Ripeness of Plaintiff's Claims.**

Ripeness is a question of timing, designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements. The ripeness inquiry includes both a constitutional and a prudential component.

Under the doctrine of ripeness, "a federal court normally ought not resolve issues involving contingent future events that may not occur as anticipated, or indeed may not occur at all.  In the absence of an immediate and certain injury to a party, a dispute has not matured sufficiently to warrant judicial intervention."  *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996).  Prudential ripeness is guided by two considerations:  the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.  A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1122–26 (9th Cir. 2009) (en banc).  "When plaintiffs 'do not claim that they have ever been threatened with prosecution, that the prosecution is likely, or even that a prosecution is remotely possible,' they do not allege 'a dispute susceptible to resolution by a federal court.'"  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 299 (citation omitted).

Plaintiff's claims are not yet ripe.  His only factual allegation is that a complaint was made, not that there are any present charges against him.  Even if BSIS has initiated an investigation, which it is not clear that it has, such an investigation may never lead to disciplinary action.  Plaintiff argues "a person acting in concert, with knowledge, or at the behest of these defendants started a process in early 2011 to strip Plaintiff of his state license," but does not explain why starting such a process is an actionable, rather than merely speculative, injury (*see* Opp. 6).  Instead, the complaint relies on conjecture as to future events, namely, the possibility that plaintiff "*may* lose his license and business" as a result of disciplinary action that has not even commenced (*see* First Amd. Compl. ¶ 31) (emphasis added).  Even assuming the possibility that disciplinary actions might occur, withholding court consideration at this stage does not impose hardship on plaintiff, as the Private Security Services Act provides

1    plaintiff with the opportunity to appeal any negative BSIS decision through the DRC and/or a

2    formal administrative hearing.

3        The present action is distinguishable from *Canatella v. State of California*, 304 F.3d 843

4    (9th Cir. 2002), where an attorney's Section 1983 claims were based on the same rules and

5    statutes on which he had already been charged and disciplined.  This prompted our court of

6    appeals to conclude that there was a strong likelihood that Attorney Canatella would continue

7    to be charged and punished by the State Bar for violating those specific provisions, and therefore

8    adjudication by the district court was proper.  The court held that, in that circumstance,

9    "Canatella's claims d[id] not arise in a factual vacuum and [we]re sufficiently framed to render

10   them fit for judicial decision" *id.* at 855.

11       Here, plaintiff does not allege he has been previously disciplined by BSIS, therefore, his

12   position is no different from any other private security entity or officer who suspects he is being

13   investigated by BSIS.  If plaintiff's claims were allowed, plaintiff and any other private security

14   entity that suspects it is being investigated could pursue a federal injunction to terminate the

15   investigation, thus defeating the BSIS's ability to regulate licensing within its jurisdiction.

16   This Court should not entertain satellite litigation over the fact that someone petitioned BSIS for

17   redress of grievances.  Until plaintiff runs the course with BSIS and administrative adjudication

18   through a formal hearing, his claims will not be ripe for consideration in federal court.

19                                **CONCLUSION**

20       For the foregoing reasons, defendants' motion to dismiss is **GRANTED**.  The motion

21   hearing scheduled for July 12 is **VACATED**.  Plaintiff may seek leave to amend and will have

22   **FOURTEEN CALENDAR DAYS** from the date of this order to file a motion, noticed on the normal

23   35-day track, for leave to file an amended complaint in order to further develop his claims.

24   A proposed amended complaint must be appended to the motion and plaintiff must plead his

25   best case.  The motion should clearly explain how the amendments to the complaint cure the

26

27

28

**United States District Court**
For the Northern District of California

19

deficiencies identified herein. Plaintiff is ordered to plead factual support for the claims with specificity. There are unlikely to be further opportunities to amend.

**IT IS SO ORDERED.**

Dated: July 2, 2012.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE